IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID LEE GREEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07 C 4168 |
| ) | |
| WARDEN, MCC CHICAGO; ) | |
| MS. CHRISTMAS; UNITED STATES ) | |
| OF AMERICA; and MR. HARRIS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

David Lee Green has sued three Bureau of Prison officials under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the United States under the Federal Tort Claims Act (FTCA). Defendants have moved for summary judgment on all of Green's claims. For the following reasons, the Court grants defendants' motion with regard to the *Bivens* claims but denies it with regard to the FTCA claim.

### Facts

Because defendants have moved for summary judgment, the Court views the facts in the light most favorable to Green and draws reasonable inferences in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

On November 7, 2005, Green was detained at the Metropolitan Correctional Center in Chicago (MCC). On that date, another inmate struck

Green and threatened his life. Green says he reported this to defendant Raymonde Harris, a supervising correctional officer, telling Harris he feared for his safety. Harris, however, did not believe Green and left him alone with the other inmate. The other inmate then struck Green again, knocking him to the floor, causing Green to lose a tooth and breaking his eyeglasses.

On November 11, 2005, Green submitted to the Bureau of Prisons (BOP) a Form SF-95, entitled "Claim for Damages, Injury, or Death," seeking compensation of $600 for his personal injury and $216 for the loss of his glasses, a total of $816. Submission of this form is a prerequisite to filing a lawsuit under the FTCA. In the form, Green stated that he was

> assulted [sic] while at work, in the kitchen of the MCC Chicago, at around 5:15 AM Monday 11-1-05 I had been hit on the back of my head while at the ovens in the kitchen, I went to the supervisors dest [sic] and was telling him that inmate Tucker had hit me and also threatened my life – at which time right in front of the supervisors desk he Tucker hit me in my mouth – breaking my tooth & knocking a tooth out – and causing my classes to break as I was knocked to floor.

Def. Ex. C, attachment 5.

About a week later, Green submitted to counselor Charvella Christmas an internal grievance on a BOP form, accusing Harris of failing to protect him. He did not receive a written response to the grievance. Green claims that on December 6-7, 2005, Christmas and another counselor named Owens pressured him to drop his grievance and, he says, threatened him when he refused to do so. Two days later, Green was transferred to the Kankakee County Jail; he contends this was in retaliation for refusing to drop the

2

grievance against Harris. Green remained at the Kankakee jail from for nearly nine months, from December 9, 2005 through September 1, 2006. While there, Green says, he lacked access to any legal materials.

Because he did not receive a response to his first grievance, Green says, he submitted an appeal by letter to the BOP regional office in December 2005, shortly after he arrived at the Kankakee jail. The BOP advised Green by letter dated January 10, 2006 that it was rejecting his appeal, stating that he had to first file and pursue a grievance at the institution, namely, at the MCC.

Green submitted a second grievance form to the MCC on February 7 or 8, 2006, while he was still at the Kankakee jail. In that grievance, Green asserted complaints against Harris relating to the assault and against Christmas and Irvin relating to their alleged interference with his first grievance. Green again did not receive a response, so on March 10, 2006 he wrote the MCC's warden to find out about the status of his grievances. On March 16, 2006, Green received a letter from Richard Hansford, an attorney-advisor at the MCC, stating that the MCC could not "receipt" Green's grievance because he was no longer incarcerated there. In the letter, Hansford stated that Green could submit a "remedy request" to the BOP regional office. Hansford also stated that Green could "resubmit [his] request to MCC Chicago if you return to this institution." Pl. Ex. 13.

In early April 2006, Green received a letter from the BOP dated March 30, 2006, in response to his filing of the Form SF-95. The Court quotes the letter in

full:

March 30, 2006

David Green
Register No. 01665-041
Jerome Combs Correctional Facility
3050 S. Justice Way
Kankakee, IL 60901

Re:  Administrative Claim Number TRT-NCR-2005-00615
     Property Claims:  $816.00

**CERTIFIED NUMBER 7001 1940 0000 1831 0895**

Dear Mr. Green:

The above referenced tort claim has been considered for administrative review pursuant to 28 C.F.R. § 0.172, Authority: Federal Tort Claims and 28 C.F.R. Part 14, Administrative Claims Under Federal Tort Claims Act.  Investigation of your claim did not reveal you suffered any personal property loss as a result of the negligent acts or omissions of Bureau of Prisons employees acting within the scope of their employment.

As a result of this investigation, your claim is denied.  This memorandum serves as a notification of final denial under 28 C.F.R. § 14.9, Final Denial of Claim.  If you are dissatisfied with our agency's action, you may file suit in an appropriate U.S. District Court no later than six months after the date of mailing of this notification.

Def. Ex. 13, attachment 6.  Green did not file suit within six months of the sending of the letter.

On April 19, 2006, Green submitted a second grievance to the BOP regional office, again complaining of Harris' failure to protect him and retaliation by Christmas and Owens.  Evidently Green made reference in this grievance to the tort claims process.  In late April or early May 2006, Green received a letter from the BOP regional office rejecting Green's complaint.  In

the letter, the regional office stated that it had investigated the matter and concluded that Green's claims lacked merit. The concluding language of the letter stated:

> Accordingly, we find no merit to your appeal. Pursuant to 28 CFR Part 543, Subpart C, any claim for monetary damages for damage to or loss of property must be filed under the Federal Tort Claims Act.
>
> Based on the above information, your Regional Administrative Remedy Appeal is denied.
>
> If you are dissatisfied with this response, you may appeal to the Office of General Counsel, Federal Bureau of Prisons, 320 First Street, NW, Washington, D.C. 20534. Your appeal must be received in the Office of General Counsel within 30 days form the date of this response.

Def. Ex. C, attachment 4.

Green did not appeal to the BOP's General Counsel; he reiterates that he had no access to legal materials while at Kankakee. Upon returning to the MCC in September 2006, Green tried to resubmit his grievance to the MCC's warden, consistent with what attorney-advisor Hansford had written him back in March 2006. Green says, however, that counselor Owens refused to accept the grievance.

Later in September, Green was transferred to FCI Oxford, located in Wisconsin. In mid-October 2006, Green encountered the MCC's assistant warden, who was visiting Oxford, and showed him Hansford's letter. According to Green, the assistant warden told Green to refile his appeal with the BOP regional office. Green did so in October 2006. He says he never received a response.

After October 2006, Green made efforts to locate and consult with legal counsel but was unable to find a lawyer to take on his case. Eventually he obtained information from the Clerk of the United States District Court for the Western District of Wisconsin regarding how to file suit. On December 29, 2006, Green filed suit by mailing a *pro se* complaint to the Clerk of that court. The case was later transferred to this Court.

Defendants have moved for summary judgment, arguing that Green failed to exhaust prison grievance procedures with regard to his *Bivens* claim and, with regard to his FTCA claim, failed to describe his claim sufficiently in his administrative claim and did not file suit in timely fashion after the agency denied that claim.

## Discussion

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a summary judgment motion, the Court reads the evidentiary record in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Anderson*, 477 U.S. at 255; *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

1.  *Bivens* claims

Under the Prison Litigation Reform Act (PLRA) , "no action shall be brought with respect to prison conditions under section 1983 of this title . . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The individual defendants seek summary judgment on Green's *Bivens* claims on the ground that he failed to exhaust internal BOP remedies before filing suit, specifically by failing to pursue an appeal to the BOP office of general counsel, the last step in the internal appeal process.  *See generally Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.").

Under the PLRA, a district court must dismiss a case if the prisoner-plaintiff has failed to exhaust available administrative remedies prior to filing suit.  *See Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Perez v. Wis. Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999).  If, however, administrative remedies are not available to the prisoner, exhaustion is not required.  *See, e.g., Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).  In particular, if prison officials prevent a prisoner from using the administrative process, then an administrative remedy is unavailable, and exhaustion is not required.  *Id.*  The Seventh Circuit has stated that "[p]rison officials may not take unfair advantage of the exhaustion requirement, [ ] and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use

7

affirmative misconduct to prevent a prisoner from exhausting.'" *Id.* (quoting *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006)).

Green contends that after he refused to withdraw his grievance, MCC officials retaliated against him by transferring him to the Kankakee jail, which he says is a less desirable facility completely lacking in legal research materials. Green has made out a decent circumstantial case of retaliation. He has provided evidence that MCC counselors Christmas and Owens pressured him to drop the grievance and threatened him when he refused to do so, and that he was transferred to Kankakee just two days after he refused to accede. The problem, however, is that the transfer to Kankakee did not, in fact, deter Green from pursuing his grievances or make the grievance process unavailable to him. In December 2005, after Green was transferred to the Kankakee jail, he submitted an initial appeal to the BOP regional office; in February 2006, while still at Kankakee, he submitted a renewed grievance to the MCC; and in April 2006, while at Kankakee and after receiving Hansford's letter, he submitted a second grievance to the BOP regional office. Green's failure to follow through on his grievance appeal did not occur until well after all of that, when he failed to submit an appeal to the BOP's Office of General Counsel, as the BOP's denial letter told him he could do. In short, reasonable fact finder could infer from these events that the alleged acts of retaliation rendered the grievance procedure unavailable to Green or impacted in any way his failure to carry the procedure through to the end. In fact, Green does not state in his affidavit that

8

he was concerned about further retaliation if he continued his appeal.

Green makes several other arguments regarding why he should not be found to have failed to exhaust administrative remedies regarding his *Bivens* claims. First, he argues that Hansford's letter misled him to believe that he could refile his grievance after he returned to the MCC. When he returned there in September 2006, Green says, he tried to refile his grievance but was denied permission to do so. The problem with this argument is that Hansford's letter basically gave Green an either-or choice: go directly to the BOP regional office, or wait until returning to the MCC and file. Green took the first route, filing in relatively prompt fashion with the BOP regional office. Having chosen that route, Green cannot reasonably contend that he could follow it part way and then, when he did not get relief, leave that road and start all over again with Hansford's second alternative. And significantly, Green does not contend in his lengthy and detailed affidavit that Hansford's letter misled him in a way that caused him not to appeal despite what the BOP regional office's letter advised him.

Second, Green contends argues that the statement in the regional office's denial letter that "pursuant to 28 C.F.R. Part 543, Subpart C, any claim for monetary damages . . . must be filed under the [FTCA]" was confusing. He argues that because he did not have access to the Code of Federal Regulations at the Kankakee jail, the grievance process effectively became unavailable to

9

him at that point.  Again, the Court disagrees.[1]   As defendants point out, Green does not say anywhere in his lengthy affidavit that he was misled by the letter or that this statement in the letter had anything to do with his failure to appeal to the BOP Office of General Counsel as the letter advised.  Nor does Green say in his affidavit that the lack of access to legal materials explains his failure to appeal.

Finally, Green argues that the entire course of events – beginning with the loss of his first grievance – reduced the administrative remedy system to a process that was unavailable in reality though it may have existed on paper. The Court disagrees.  Again, despite the problems he faced, Green was able to navigate his way through both the PLRA and FTCA administrative processes. The only real hitch on his end involved his failure to pursue the last internal appeal.  Nothing in Green's affidavit or his other submissions to the Court suggests that the problems he experienced at lower levels of the grievance process in any way rendered that last step in the process effectively unavailable to him.  Similarly, to the extent the doctrine of equitable estoppel applies in this context, Green's failure to provide evidence of reasonable reliance on what he contends was BOP's misrepresentation prevents him from relying on that doctrine.

---

[1] To be clear, the Court does not doubt Green's contentions regarding the inadequacy of the Kankakee jail's law library for these purposes; the Court has seen it first hand. But Green has failed to provide evidence from which a fact finder reasonably could determine that this had anything to do with his failure to pursue the internal appeal process to the end.

For these reasons, the defendants other than the United States are entitled to summary judgment, on non-exhaustion grounds, with regard to Green's *Bivens* claims.

**2. FTCA Claim**

Green also asserts a claim against the government under the FTCA, which )provides that the United States is liable in tort "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Before filing a FTCA lawsuit in court, the plaintiff must first file an administrative claim with the federal agency allegedly responsible for his injuries. *Id.* § 2675(a). The FTCA further provides that the plaintiff must file suit "within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." *Id.* § 2401(b).

The United States seeks summary judgment on the ground that Green failed to file suit within six months after BOP denied his administrative claim. Green argues, however, that the denial letter that he received from BOP made reference only to his personal property claim—which Green does not appear to assert in this lawsuit – and failed to address the personal injury component of his claim. When the agency does not formally deny an administrative tort claim within six months, the claimant may file suit in federal court and may, in effect, wait indefinitely before filing suit. *See, e.g., Reo v. United States Postal Serv.* 98 F.3d 73, 75 (3d Cir. 1996); *see also* 28 U.S.C. § 2675(a) ("The failure of an

agency to make a final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section."),

The BOP's March 30, 2006 letter addressing his administrative claim made reference in the heading only to his "property claim," and the text of the letter said nothing about his claim for personal injury but rather said only that the BOP had concluded that he had not "suffered any personal property loss" as a result of the actions of BOP employees.  The United States argues that because the letter's heading included the full amount Green had claimed for his injuries and property loss – $816 – next to the heading "property claim," Green knew or should have realized that the letter disposed of his claim in its entirety. The Court disagrees.  The denial letter is reasonably read, particularly by an unsophisticated individual, as dealing only with Green's property damage claim and not with his personal injury claim.  The government is not entitled to dismissal of Green's FTCA claim on this basis.

The government also argues that Green's administrative claim was deficient because it did not put BOP on notice that one of its employees was claimed to have been negligent in failing to protect Green from the other prisoner.  Again, the Court disagrees.  Green's claim, quoted earlier in this decision, made it clear that he was struck by another prisoner, then complained to a guard, and then was struck again by the same prisoner near the guard's desk.  From this, "a legally trained reader would infer" a claim of failure to

12

protect.  *See Murray v. United States*, 73 F.3d 1448, 1452 (7th Cir. 1996).

## Conclusion

For the reasons stated above, the Court grants defendants' motion for summary judgment [docket no. 39] as to plaintiff's *Bivens* claims but denies the motion as to his FTCA claim.  The United States is directed to answer the complaint by no later than August 19, 2008.  The Clerk is directed to terminate all defendants other than the United States.  The Court sets the case for a status hearing on August 20, 2008 at 9:30 a.m. for the purpose of setting a discovery schedule and directs counsel to confer prior to that date so that they can propose a schedule to the Court.

```
                              _____
                                     MATTHEW F. KENNELLY
                                    United States District Judge
```

Date:  August 7, 2008